. Succession of Bidwell.

No. 12,639.

SUCCESSION OF MRS. LOUISA J. BIDWELL.

SYLLABUS.

Upon the production of a bank-box containing a sum of money which is placed in an envelope that is endorsed in the name of a third person to the knowledge of the deceased, and his claim is otherwise supported by testimony, it will be upheld as against the executor of the deceased, and such third person decreed entitled to the possession thereof.

O N APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Chaffe & Bowers* for John T. McDonald, Plaintiff and Appellant.

*James McConnell, Jr.,* for George K. Pratt, Testamentary Executor and Appellee.

Argued and submitted April 4, 1898.
Opinion handed down June 22, 1898.
Judgment amended and rehearing refused June 29, 1899.

(MILLER, J., dissenting, filed a separate opinion.)

On application for rehearing, *per curiam.*

The opinion of the court was delivered by
WATKINS, J. Louisa J. Bidwell died testate on the 16th day of May, 1897, leaving considerable property situated in New Orleans, Louisiana, and some in Pass Christian, Mississippi, of which she disposed by last will and testament—appointing George K. Pratt executor.

Soon after her death, the aforesaid executor produced her will in the Civil District Court for the Parish of Orleans, as that of her domicile, and had same probated and was qualified thereunder.

Not long subsequent to his qualification, a rule was taken by him upon the Whitney National Bank for the production of a certain box in its vault; and to that rule an opposition was filed by John T. Mc-

Donald, of Pass Christian, Mississippi, claiming the bank box and its contents.

The demand of opponent is best detailed in the language of the opponent's answer to the rule, and for that purpose we make the following extracts therefrom, viz:

That he, the said John T. McDonald, is the owner of said bank box, and its contents, to-wit:

"*One certain sealed envelope, marked 'John T. McDonald, Pass " Christian, Miss.;' said envelope containing money to the amount " and of the value of two thousand eight hundred dollars;* two ladies' " gold watches, one gentleman's gold watch, one diamond bracelet, two " old-fashioned flat gold bracelets, one solitaire diamond ring, two long " neck watch chains, one gold necklace with head design, one necklace " locket (design of cross, anchor and heart), one small gold locket "(containing hair), one pair cuff buttons, one Masonic charm (made of " twenty-dollar gold piece), one pair imitation diamond earrings, one " pair of gold hoop earrings, one strawberry diamond breastpin, one " breastpin, and other small items of jewelry, one chamois purse, with " old-time coins, etc."

We have italicized the significant portion of the demand because it appertains to the special and particular object to be attained by his opposition, that is to say, the sealed envelope which was contained in the bank box, and marked "John T. McDonald, Pass Christian. Mississippi", with twenty-eight hundred dollars therein.

We make the further extract from the petition of opposition, for the purpose of emphasizing that statement, viz:

"That the deceased, Louisa J. Bidwell, gave to him all of this prop- " erty, and all the contents of this bank box, *save and except the en- " velope, the money contained therein, which was the property of the " said John T. McDonald prior to the gift of the bank box, and had " been deposited by the said John T. McDonald in the said bank box " for safe keeping, by and with the consent of the said Louisa J. Bid- " well;* same were given to the said John T. McDonald by the said " Louisa J. Bidwell on March 26, 1897, she then being sick in bed and " not being able to obtain the manual possession of said contents of " the bank box, she gave him the key of said bank box, together with " an order on the Whitney National Bank, to turn over the contents " thereof to him, John T. McDonald; that from and after said date, " Mrs. Louisa J. Bidwell continued to be sick and confined to her

"house, and a further delivery by her was thereby rendered impossi-
"ble prior to her death."

We have again italicized a similar part of opponent's demand, for
the purpose of limiting the discussion thereto, and of disembarrassing
it of unnecessary details.

From the foregoing extracts it is plain, that the opponent claims
ownership of the twenty-eight hundred dollars, which were contained
in an envelope sealed, endorsed and deposited therein, by a title dif-
ferent from, and of a date anterior to that by which he claimed the
bank box and its other contents.

In other words, that his contention is, that on or about the 23rd of
December, 1896, Mrs. Bidwell gave him, by a manual delivery, $2500,
in currency, which he placed in an envelope, and endorsed his name
and the date of the transaction thereon, and in her presence and with
her permission deposited same in her bank box, No. 215, in the safe
deposit vault of the Whitney National Bank, for safe keeping—Mrs.
Bidwell at the same time placing therein, the sum of five hundred
dollars loosely in the box.

That on or about the 3rd of March, 1897, Mrs. Bidwell gave him
three hundred dollars in addition to the twenty-five hundred dollars,
the two sums aggregating twenty-eight hundred dollars; and that on
that occasion he opened and destroyed the envelope first described, and
deposited the twenty-eight hundred dollars in another one, and with
her consent and permission, he placed same in the bank box as before,
having placed a similar endorsement thereon.

His contention is further to the effect, that on the aforesaid 23rd of
December, 1896, Mrs. Bidwell drew out of the New Orleans National
Bank the sum of $3,000 on her check and placed same in her bank
box in said bank; and that same was sealed up and was about to be
returned to its place in the vault of the bank, when an officer of the
bank advised her to hire a box in some safe deposit vault. And, act-
ing upon that suggestion she hired a box in the vault of the Whitney
Bank, as is above stated.

That when she had done so, she found that her box was too large
for the vault box, and, thereupon, she opened her box and transferred
its contents to a new one. That it was upon that occasion that Mrs.
Bidwell gave him, McDonald, $2,500 of the $3,000 she had that day
drawn from the New Orleans National Bank, and which he, in her
presence, placed in the envelope and deposited in the bank box.

That on the 3rd of March, 1897, when she drew out of the New Orleans National Bank the sum of $4,000 on her check for that sum, she gave him, McDonald, $300, and placed the remaining $3,700 in her bank box, together with the $500 she had previously placed therein; and that he, McDonald, placed the $300 she then and there gave him, in a new envelope, together with the $2,500 she had previously given to him, and deposited same as aforesaid.

That as the result of these transactions, Mrs. Bidwell had drawn from the New Orleans National Bank wherein she kept an account, the total sum of $7,000; and that of this sum she gave to McDonald $2,800, and retained $4,200 thereof.

For the purpose of identifying the transaction—and for other purposes not necessary at present to be mentioned—counsel for the executor, over the objection and exception of counsel for the opponent, introduced in evidence the check-stubbs appertaining thereto, and which are of the following tenor, to-wit:

"$3,000.

"December 23, 1896,

"Order of Mrs. L. J. Bidwell, *for to put in bank box 332 three thousand dollars.*"

"$4,000.

"March 3, 1897.

"Order of Mrs. L. J. Bidwell, four thousand dollars to put in bank box in Whitney National Bank, *making a total in said bank $7,000.*"

These check-stubbs, or the originals of which the foregoing purport to be copies, are alleged to have been filled out by McDonald; and while not committing himself to the correctness of their recitals in the absence of the originals, he, as a witness, admitted that he had prepared the two checks therein referred to, at Mrs. Bidwell's request, and dictation.

It is undoubtedly true that the checks referred to in the stubbs, are the identical ones to which McDonald referred in his testimony; and it is manifest that they exactly correspond in dates and amounts with the sums drawn from the New Orleans National Bank, and deposited by Mrs. Bidwell as described by the witness.

But in addition to this evidence and the statement of McDonald as a witness, these two check-stubbs bear upon their face strong corroborative details; for instance, the first one recites that the $3,000 was

to be "put in bank box 332," which was the number of Mrs. Bidwell's bank box in the New Orleans National Bank, and the $4,000 was to be "put in bank box in the Whitney National Bank," etc.,—in exact keeping with the parol testimony.

An effort is made by counsel for the executor to show that the concluding phrase of the sub-entry, viz: "making a total *in said bank* $7,000," is adverse to McDonald's contention; on the contrary we think it is literally true and confirms the truthfulness of his statement—for there were certainly "$7,000 in said bank," though it was claimed in part by McDonald, and in part by Mrs. Bidwell, ostensibly.

But the truthfulness of McDonald's statement is borne out by a written statement of contemporaneous date which was signed by Mrs. Bidwell and which is of the following tenor, viz:

Succession of Bidwell.

"(The envelope which McDonald 'saw fit to preserve and produce upon the trial, instead of carelessly destroying or casting it in the waste basket after depositing its contents in bank.)"

The endorsement at the foot of the foregoing exhibit was evidently made by counsel for the executor, and it contains the significant admission of its genuineness; and that McDonald preserved the torn envelope with the accompanying endorsement, which was written by him and signed by Mrs. Bidwell contemporaneously with the transaction of March 3rd, 1897, in the Whitney National Bank, for the purpose of establishing his claim, in case of an emergency arising requiring it.

This paper furnishes a very important link in the chain of evidence as it bears the genuine signature of Mrs. Louisa Bidwell; and is an admission in writing over her signature, endorsed upon an envelope of the Whitney National Bank, that $4,200 had been segregated from the $7,000 which she had checked out of the New Orleans National Bank, and placed same therein, and deposited the package in her bank box then in the safe-deposit vault of the Whitney Bank.

The proof being clear that Mrs. Bidwell had drawn from the New New Orleans National Bank, the total sum of $7,000, and of her having segregated $4200 therefrom, under the circumstances related, is a powerful circumstance corroborative of McDonald's claim to the $2,800, which was the exact residue.

The check-stubs, and the exhibit last referred to, confirm the fact that very intimate and confidential relations existed between McDonald and Mrs. Bidwell, which of themselves suggest plausibility for the appellant's contention, to the fact that the manual gift of the $2,800 was in fact, and intended to have been a remunerative donation in recompense for prior valuable services rendered by McDonald to Mrs. Bidwell.

On the trial McDonald was sworn as a witness, and the opening part of his interrogation gives his version of the transaction, and for the purpose of accuracy we reproduce the following extract from the record, viz.:

"Q.—Mr. McDonald, a moment ago, you said something about twenty-eight hundred dollars which was at that time in that bank box —did that belong to you?

"A.—Yes, sir.

"Q.—Please decribe that twenty-eight hundred dollars—state the

denomination of the bills, if you remember. State how the money got into that bank box, and who put it in there. Describe the envelope in which it was enclosed, and give us any other identification of the money and the packakge that you got?

"A.—Well, there were fifty fifty-dollar bills, and around these fifty fifty-dollar bills was a piece of paper marked twenty-five hundred dollars; and then there were three one hundred-dollar bills.

"Q.—Was that money loose in that bank box?

"A.—No, sir; it was placed in an envelope.

"Q.—A sealed envelope?

"A.—Yes, sir; a sealed envelope, with my name on it—John T. McDonald, Pass Christian, Miss.

"Q.—In whose handwriting?

"A.—In my handwriting.

"Q.—Who placed this money in Mrs. Bidwell's bank box?

"A.—I did.

"Q.—How came you to put it in her bank box?

"A.—Mrs. Bidwell gave me the use of her bank box at that time to place this money in there. She had some of her own money in that bank box, at the same time, for safe keeping. She left it in that bank box.

"Q.—When did you place that twenty-eight hundred dollars in that bank box—approximately?

"A.  About a year ago—may be a little more than a year ago.

"Q.—Did you put it all in there at one time?

"A.—No, sir.

"Q.—Well, tell us how you put it in there?

"A.—I put twenty-five hundred dollars in at one time, the first time, and about six months thereafter she gave me three hundred dollars. The first envelope was destroyed, and a second envelope placed in there with the twenty-eight hundred dollars. At this time Mrs. Bidwell had an envelope in there containing an amount of money belonging to herself at the same time,"

In speaking of Mrs. Bidwell's gift to him of the bank box and its contents, subsequently, the following occurred, viz.:

"Q.—What did she say with reference to the contents of the box?

"A.—I give everything to you—the money and the jewelry.

"Q.—What money did she refer to?

"A.—The money that was there in the box.

"Q.—At the time of this donation to you, was there any money belonging to her at that time in this bank box in the Whitney vault?

"A.—Yes, sir.

"Q.—How much?

"A.—Forty-two hundred dollars.

"Q.—What became of that forty-two hundred dollars?

"A.—I took that forty-two hundred dollars out and placed it to Mrs. Bidwell's credit in the New Orleans National Bank.

"Q.—Why was it you placed the money you got, which was in the bank box at the time she made the donation to you, to her credit in the New Orleans National Bank?

"A.—Mrs. Bidwell asked me to do it so she would have the money to check against for her expenses."

This testimony is quoted, not for the purpose of supporting McDonald's claim to the bank box and its contents, inclusive of the money of Mrs. Bidwell therein, but for the purpose of showing that the dealings and transactions between McDonald and Mrs. Bidwell, *subsequent to the placing of twenty-eight hundred dollars in the envelope and depositing same in the bank box,* were exclusively predicated upon the sum of *forty-two hundred dollars as the amount Mrs. Bidwell owned;* and that in this manner Mrs. Bidwell recognized *McDonald's ownership of said twenty-eight hundred dollars by the strongest possible implication.*

With regard to the situation of the parties at that time, we quote the following extract from appellant's brief, viz.:

"In March, 1897, Mrs. Bidwell was taken ill, and with various "fluctuations of condition continued sick until the sixteenth day of "May, when she died. From the thirteenth day of March she was "practically confined to her room, and a great part of the time to her "bed. During all this time, McDonald, at her instance, was in con- "stant attendance upon her, never leaving her except upon her "errands, completely in charge of all her affairs, and even directing "the management of her household. On March 26th, at which time "she was very ill, Mrs. Bidwell called appellant to her bedside, and "stating to him that she had not made for him the provision which "she had intended to make, directed him to write an order, or paper, "conveying to him the *contents* of her bank box in the Whitney "National Bank, which then contained not only the twenty-eight

Succession of Bidwell.

"hundred dollars belonging to McDonald, but *forty-two hundred*
"*dollars belonging to Mrs. Bidwell*, together with jewelry of the
"value of three or four hundred dollars.  This McDonald did, and
"the paper was written in the following terms:"

*[handwritten note]*

"Notwithstanding the foregoing assignment in writing by Mrs.
Bidwell to McDonald of the 'whole of the *contents, moneys* and other
valuables in (her) bank box,' the latter made no effort to take pos-
session thereof, but contented himself by preserving same as a title
thereto—Mrs. Bidwell remaining sick at Pass Christian in the mean-
time, and he being unable to leave her bedside."

This is an endorsement by appellee's counsel.

On the 10th of May her physician gave her the following certificate, viz.:

Succession of Bidwell.

And thereupon she executed the following order:

*[handwritten letter]*

Paso Christian, Miss
                    May 8th, 1897

Mr alfred Dufilhs
    custodian Whitney Vaults
                Dear Sir

On account of sickness I am
unable to come in person, so I
authorize Mr John F. McDonald
My legal representative, to
have access to my Bank Box
No 215 to attend to some busi-
ness for me, I furnish him
with the Keys, and password
By complying with the above
request you will oblige
    Yours Respectfully
        Mrs J Bidwell

On the presentation of this last order, McDonald was permitted
by the custodian of the Whitney Bank vault to "have access to (her)
bank box No. 215," he being in possession of the "keys and pass
word."

Having access thereto, McDonald opened the envelope containing
the forty-two hundred dollars, which Mrs. Bidwell had endorsed, and
removed said sum, leaving the torn envelope in lieu thereof, as a
voucher in her bank box; and he, thereupon, deposited the forty-two
hundred dollars in the New Orleans National Bank to Mrs. Bidwell's
account, as she had desired him to do.   This fact is shown by the
following deposit slip, viz.:

Succession of Bidwell.

# DEPOSIT

By *Louisa J. Bidwell*

# New Orleans National Bank.

*New Orleans* *May 12th* 189 7

It is agreed that Deposits in this Bank are received
on condition that United States Legal Tender Notes,
Coin or Notes of the National Banks, at the option of
the Bank, to be taken back in payment therefor.

M. F. Dunn & Bro., print, 70 Camp st., N. O.

| | | | |
|---|---|---|---|
| GOLD............... | | | |
| SILVER.............. | | | |
| CURRENCY ........ | | 29 | 00 |
| CHECKS............. | | | |
| do ........... | | | |
| do ........... | | | |
| do ........... | | | |
| do ........... | | | |
| do ........... | | | |
| do ........... | | | |
| do ........... | | | |
| do ........... | | | |
| do ........... | | | |
| do ........... | | | |
| do ........... | | | |
| do ........... | | | |
| do ........... | | | |

We have thus traced the sum of $7,000.00 from the New Orleans National Bank into the safe deposit vault of the Whitney National Bank, where same was divided between McDonald and Mrs. Bidwell, Mrs. Bidwell placing $4,200.00 in one envelope, and McDonald placing $2,800.00 in another envelope, both of these envelopes having been appropriately endorsed and put in Mrs. Bidwell's bank box by mutual consent.

We have, also, traced the same identical sum of $4,200.00 from the Whitney vault, back into the New Orleans National Bank, and at Mrs. Bidwell's credit, again.

We wish to make it very plain, that we are not dealing with the foregoing exhibits and the testimony relating to the $4,200.00 as furnishing proof of McDonald's ownership of it, but as exhibiting the separation of the fund into two parts, as a conclusive admission on the part of Mrs. Bidwell, that McDonald owned the $2,800.00.

In our opinion, the proof of McDonald's ownership and posession of the $2,800.00 is placed beyond the peradventure of a doubt; for upon what other hypothesis could these transactions have taken place?

They do not depend upon the truthfulness of McDonald's parol statements, but, on the contrary, they are established by instruments of writing which were signed by Mrs. Bidwell, and upon which she as well as McDonald predicated their subsequent actions in reference thereto.

The $4,200.00 went to Mrs. Bidwell's credit in the New Orleans National Bank, and she checked against it in paying current obligations, but the $2,800.00 remained in the envelope, and that remained unbroken in the bank box until same was produced and opened in court.

In so far as McDonald's claim to the bank box and its contents, as they stood on the 26th of March, 1897, are concerned, including the $4,200.00 in currency, we prefer to express no opinion at this time, because, as we have already shown, the same was withdrawn from the box on the 10th of May, 1897, by McDonald, at the request of Mrs. Bidwell, and does not form an element in the present controversy.

Inasmuch as McDonald's title to the $4,200.00 depends upon the self-same evidence as his title to the other articles which were therein contained, it would be manifestly unjust and incorrect for us to

decide whether his title thereto is legal and valid, under the circumstances stated.

It is our conclusion that McDonald's claim to the twenty-eight hundred dollars is made out and must be sustained, but that in respect to his ownership of the bank box and its contents, including the $4,200.00, we are of opinion that a non-suit should be entered with a full reservation of all rights in respect thereto.

There were numerous witnesses interrogated, and their testimony covers many pages of the record, but it chiefly refers to Mrs. Bidwell's donation of the bank box and its contents, including the forty-two hundred dollars, with which we have chosen not to deal, for the foregoing good and sufficient reasons.

Much of it, also, refers to McDonald's alleged ownership of the pleasure schooner, "Queen of the Fleet," by virtue of a title derived from Mrs. Bidwell, and with this we can not deal for the plain reason that it is not a subject of any controversy in this suit.

Whether or not McDonald was in ample funds to have purchased an interest in the vessel at the time indicated in the testimony, is fully answered by his account current with the New Orleans National Bank, which shows a deposit of $586.00 on August 10th, 1896, and $60.00 on the 9th of September, 1896, aggregating $646.00, and checks aggregating $74.50 up to and including January 18th, 1897, leaving him a credit balance June 8th, 1897—subsequent to Mrs. Bidwell's death—of $501.50.

All of these are facts—indisputable facts—which in no manner or form depend upon the parol testimony of witnesses.

There is another important distinction between the manual gift of the $2,800.00 to McDonald, and the donation of the bank box and its contents at a subsequent period, which is founded upon the citizenship, of the donor, Mrs. Bidwell, who, it is claimed by the counsel for the donee, was a citizen of the State of Mississippi at the time when and the place where the written instruments purporting to evidence same were signed—their contention being that the principles of law therein obtaining must govern its interpretation.

This is an additional reason why the two demands should be separately considered.

But it is insisted in the argument on the other side, that the evidence shows that opponent's pretensions of ownership of the bank box and its contents—including the $4,200—are utterly groudless, and

that his testimony in support of same is entirely unsupported and unworthy of belief; and that being so, his entire testimony in respect to the gift of the $2,800.00 must be disregarded and rejected, on the theory *falsus in uno, falsus in omnibus.*

Let us apply this test.

On the 25th of March, 1897, Louisa J. Bidwell signed in her own handwriting an order in the following words, viz.:

"To the keeper and officials of the Whitney National Bank of New Orleans:

"I command you to turn over to Mr. John T. McDonald, of Pass Christian, Miss., the whole of the *contents, moneys* and other valuables *in my bank box* without hindrance or further orders from me."

There is no question of the fact, that this order was broad enough, and succinct enough in its terms to embrace all the moneys in the box; the $2,800.00 as well as the $4,200.00, as both of these sums were then in the box.

Can it be said that the testimony of the opponent is at variance with that order, the genuineness of which no one denies?

Certainly not.

Then the claim of the opponent is not only supported by the signature to the endorsement upon the torn envelope which contained the $4,200.00, but by the positive terms of said order.

The evidence shows that the $2,800.00 had been segregated from the $4,200.00 and the two amounts placed in separate envelopes in the bank box, just three weeks prior to the date of said order; and that those two envelopes remained therein intact until the 8th of May, 1897—six weeks subsequent to the date of said order.

The contention on the other side is that the order which Mrs. Bidwell gave the custodian of the Whitney Bank on the last named date, places an altogether different construction upon her previous order, and one that is destructive of opponent's claim to the contents of the box, moneys, etc.

The order says:

"I authorize Mr. John T. McDonald, my legal representative, to have access to my bank box No. 215 to attend to some business for me."

Does this language necessarily mean that Mrs. Bidwell intended a revocation of her former order?

We think not.

In case there be doubt with regard to the proper construction of a contract, a good rule for its interpretation is that found in the manner in which the parties have acted in carrying same into execution. This is the rule established by Rev. Civil Code, 1956.

Applying that rule we find that McDonald opened the bank box, removed the $4,200.00, and deposited the same, on the same date it was withdrawn, to the credit of Mrs. Bidwell in the New Orleans National Bank.

Of this Mrs. Bidwell made no complaint, but on the same date checked this identical amount out again.

But the evidence shows that McDonald did not withdraw from the bank box either the jewelry and other contents of same, or the $2,800.00.

Is it not, therefore, clear that the "business" which McDonald was instructed to attend to only related to the $4,200.00 transaction? We think so.

In the discussion of McDonald's truthfulness, we need not go into the question of his ownership *vel non* of the $4,200.00; but that transaction does, at least, give color to that pretension, and tends to fortify his claim to the $2,800.00.

In addition to the foregoing, another witness who attended Mrs. Bidwell in her illness, confirms, in a circumstantial way, the truthfulness of opponent's statements.

Under the circumstances, and in the absence of any countervailing evidence, we are not warranted in applying the rule that is insisted on.

The proof discloses, and the fact is, that for years previous to the death of Mrs. Bidwell, the appellant had been her confidential and trusted agent and man of affairs. That he abandoned all other work, in great part, and devoted his time, attention, and talents to the care and management of her business; and the proof abundantly shows that she had every confidence in him, and there is not a scintilla of evidence tending to show that her trust had been, in the smallest particular, betrayed.

There is another circumstance which is worthy of mention, and which possesses significance, which is, that there is on the bank account of McDonald for the years 1896 and 1897, no credit which is apparently derived from Mrs. Bidwell; and not an entry on her bank

look which shows any payment to McDonald—both of their accounts being in evidence.

Thus it becomes apparent that Mrs. Bidwell, an aged and wealthy woman, felt under obligation to make to McDonald this remunerative donation, in view of her approaching dissolution, as a partial recompense for his appreciated and valuable services.

Therefore, the demands of the opponent must be sustained, and he be decreed the owner of the bank box and the contents thereof, and entitled to the possession of same; but it is declared not to include the sum of forty-two hundred dollars to which reference is herein made.

It is therefore ordered, adjudged and decreed, that the opposition and demand of John T. McDonald be sustained, and that the demand of the executor of the deceased, Mrs. Louisa Bidwell, be disallowed and rejected at his cost; and that said opponent and appellant be decreed the owner of the bank box and the contents thereof, including the sum of twenty-eight hundred dollars contained therein, but not to include the sum of forty-two hundred dollars to which reference is made.

MILLER, J., with whom concurred the Chief Justice, handed down a dissenting opinion in this case.

### PER CURAM:

The application for rehearing filed herein on behalf of the executor, and the able briefs submitted by his counsel in support thereof, have had our consideration, but our conclusions remain unchanged that the opponent has made good his claim for the $2,800 contained in the bank box of the deceased.

We do not deem it necessary to review again the facts and circumstances upon which this conclusion rests.

But in the draft of the decree heretofore handed down an error was made in this, to-wit: That opponent was adjudged to be "the owner of the bank box and the contents thereof, including the sum of twenty-eight hundred dollars therein contained, but not to include the sum of forty-two hundred dollars to which reference was made."

A reference to the body of the opinion will show that the only award intended to be made in his favor was for the $2,800.

For instance it was there stated as follows:

"It is our conclusion that McDonald's claim to the twenty-eight hundred dollars is made out, and must be sustained; but that in respect to his ownership of the bank box and its contents, including the $4,200, we are of opinion a non-suit should be entered with full reservation of all his rights in respect thereto."

The decree in the particular referred to must be amended.

It is therefore ordered that the former decree of this court herein be set aside, and it is now adjudged and decreed that the opposition of John T. McDonald be sustained to the extent that his demand to be declared the owner of the sealed envelope marked "John T. McDonald, Pass Christian, Miss.," and containing twenty-eight hundred dollars, found in the bank box of the deceased, be recognized, and that George K. Pratt, executor, be directed to deliver to him the said envelope and its contents, twenty-eight hundred dollars.

It is further ordered, etc., that the demand of said McDonald for the bank box itself and the remaining contents thereof, including the sum of forty-two hundred dollars withdrawn on May 10, 1897, be rejected as in case of non-suit, and that the said bank box and its contents be given into the custody of the said George K. Pratt in his capacity as executor aforesaid.

It is further ordered, etc., that the cost of the opposition of said McDonald, in both courts, be paid by the Succession of Louisa J. Bidwell.

NICHOLL, C. J., dissents.

MONROE, J., takes no part, having sat in the case in the trial court as district judge.