Statement of the Case.
MONROE, C. J.
Plaintiffs, the widow and heirs of Dr. Yolney Metcalfe and of a deceased coheir, brought this suit, under Act No. 38 of 1908, to “establish title” to the east half of the east half of section 31, township 9 north, range 9 east, in the parish of Concordia, and they are before this court asking for the review of an adverse judgment, rendered by the district court and affirmed by the Court of Appeals, Second Circuit. The parties named in the petition and W. D. Mounger, receiver of the Tensas River Planting Company, appeared, and, by way of answer, alleged that the tract described was included in and sold as part of the “Rota Quinta Plantation,” under a mortgage imposed upon the plantation by plaintiffs, and was so acquired, through mesne conveyances and inheritance, by the defendants Mrs. Ellen H. Green and her children; that Mrs. Green died since the institution of this suit, and her children, inheriting her interest, conveyed the plantation, including the tract in question, to Ellen H. Green Company, by which it was similarly conveyed to First Natchez Bank, which, in like manner, conveyed it to W. P. Campbell, who conveyed it, as part of said plantation, to Tensas River Planting Company, of which the defendant W. D. Mounger is receiver. They alleged that they and their authors in title had enjoyed open and uninterrupted possession of said plantation and tract, under a title translative of property, for more than 10 years prior to the institution of this suit, and they pleaded the prescription of 10 years. They also alleged that if plaintiffs ever had any interest in said property, they had abandoned it for more than 30 years, and were estopped to disturb defendants with respect to such interest which defendants had, in the meanwhile, acquired.
The subjoined sketch, which is a composite of the several plats of survey that we find in the transcript, shows with sufficient accuracy (in the shaded areas) the land owned by Dr. Metcalfe at the time of his death. As to the acreage, the figures on the sketch (taken from one of the plats in the record) differ slightly from those found by the counsel, respectively, but the difference is immaterial, for the purposes of this opinion. The main body, of say 1,100 acres, being the land in sections 25 and 30, was bought in 1845, under one title, from J. Franklin Ford, and the various other tracts were acquired from the United States, by different entries, in 1846, the E. % and S. W. (fractional) % of section 24 having been included in those entries, but Dr. Metcalfe in 1851 sold to Fred Stanton, as “supposed to contain about 90 acres,” that portion of section 24 which, on the “sketch,” bears the legend “90 acres, Stanton.”

*953

*955 The land so acquired was used as a cotton plantation, the arable portion of it lying in sections 19, 24, 25, and 30, whilst that lying in sections 31, 32, 5, and 6, was, as we take it, a wooded swamp. Dr. Metcalfe died in 1852, leaving six children, all minors, one of whom died in infancy. His widow, originally plaintiff herein (who has died since the institution of this suit) presented to the district court a petition in which she alleged the death of her husband, and that he had “left, at his death, in this parish, considerable property, consisting of a cotton plantation, slaves, and personal property,” and she caused an inventory to be made, of which only an excerpt relating to the land is copied in the transcript, with a notation, however, concerning the other property, as follows:
“A tract of land situated on, and adjacent to, the river Tensas, in this parish, cultivated as a cotton plantation and bounded on the north and east by lands of B. F. B. Hunter; southeast, by D. P. Williams’ Mosgiel place; southwest and west, by lands of Ered Stanton, containing 3,200 acres; appraised at $26,000. LNext follows a long .list of slaves and other property.]”
It is beyond dispute, notwithstanding the estimated acreage as thus stated in the inventory, that the decedent owned no other land in the parish at the time of his death, and had never owned any other than that which is exhibited on the above-mentioned sketch.
The widow and tutrix went on with the cultivation of the plantation, and in April, 1867, in her own behalf and as tutrix of James A. Metcalfe, who was still a minor, and in conjunction with the other children, who had attained majority or had been emancipated, she executed an act of mortgage in favor of M. Gillis & Co. (to secure three notes given by the mortgagors for advances) in which the mortgaged property is described as follows (omitting so much as is not here needed), to wit:
“First. A certain tract of land, * * * being the whole of section number thirty (30) in township number nine (9) of range number nine (9) east, and such part of section number twenty-five (25) of township nine (9) of range number eight (8) east, as will make up eleven hundred acres; * * * and * * * the west half of the northwest quarter and west half of the southwest quarter of section nineteen (19), township nine (9), range nine (9), * * * containing one hundred and fifty-nine 62/100 acres.
159.62.
“Bast half and southwest quarter, fractional quarter, section twenty-four, township nine (9), range nine (9) east, * * * containing four hundred and sixty-seven acres. 467.
“West half northwest quarter, section five, township eight (8), range nine (9), * * * containing seventy-nine 41/100 acres. 79.41.
“East half northeast quarter section six, township eight (8), range nine (9), * * * containing seventy-nine 50/100 acres. 79.50.
“Containing, in the whole, about nineteen [hundred] acres, and forming what is known as Rota Quinta Plantation.”
In January, 1872, Charles E. Alter obtained judgment by confession, on two of the notes to secure which the mortgage thus mentioned was executed, with recognition of the mortgage, but with a stay of execution, and it was not until February 28, 1877, that he caused execution to be issued, under which, on March 2d, the mortgaged property was seized and advertised to be sold on April 7th. On February 28th, also, an instrument under private signature was executed with a view to effecting an amicable partition of the “Succession, * * * consisting of the Rota Quinta Plantation, * * * being the whole of section number thirty (30),” etc. (the description being the same as contained in the mortgage to M. Gillis & Co.), which description was followed by an agreement whereby Mrs. Metcalfe renounced her interest. Sections 25 and 30 were to be divided, by lines running from north to south, into five lots, containing, each approximately, 100 acres of arable land, and numbered from 1 to 5, beginning at the east side of section 30 and counting westward, and “all the swamp or wild lands of said plantation,” lying south of said sections 25 and 30, were to be annexed to, and form part of, lot 1. A. W. Metcalfe, who was managing the plantation at that *957 time, was the only party in interest who was present and. signed the instrument, the others having been absent from the state and represented by an attorney at law, who also acted as their attorney in fact.
Thereafter, on April 6th, James A. Metcalfe and A. W. Metcalfe (proceeding in separate suits) injoined the seizure under the judgment obtained by Alter, and thus inaugurated a litigation which was terminated by a judgment of this court, wherein it was held that the mortgage, judgment, and seizure were void as to James A. Metcalfe and his interest in the property, because of his minority, and that the attempted partition was a nullity, on its face, for several reasons: it being found, among other things, that the authority of the attorney who acted as agent was not sufficiently shown, and that he could not represent five different interests in the same transaction. Metcalfe v. Alter, 31 La. Ann. 389.
Alter then proceeded with the execution of his judgment, as amended, and, the sheriff having seized an undivided four-fifths interest in the mortgaged property, it was adjudicated to the plaintiff in execution, who, on May 10, 1881, received a sheriff’s deed in which the description of the property as contained in the act of mortgage was amended by the insertion of the word “hundred,” after the word nineteen. On June 10, 1881, Alter sold the interest so acquired, with the same description of the whole property, to James H. Pendleton, and, subsequently, caused it to be again seized, in a proceeding via executiva, in which, on April 21, 1885, it was adjudicated to Mrs. P. J. Pendleton, who on March 25, 1886, acquired also the interest of James A. Metcalfe, and on March 2, 1S91, as a widow, with her son, James H. Pendleton, mortgaged the entire property to Norman F. Thompson, by a description which was practically identical with that contained in the mortgage to Gillis & Go. and in the sale thereunder, save that the tract supposed to contain about 90 acres, which had, previously, been sold to Stanton, was omitted and that the acreage was fixed at 1,796.13 acres, more or less; the statement of the aggregate acreage being followed (as in previous acts) by the statement “and is known as Rota' Quinta Plantation.”
On May 8, 1896, Mrs. Pendleton conveyed the entire property to the Equitable Securities Company, by the description last above given; and on December 28, 1896, that company conveyed it, by the same description, to Edward H. Green and Thomas K. Green. Thomas K. Green thereafter died, and on December 31, 1901, Edward H. Green conveyed the half interest which he had acquired to Mrs. Ellen H. Green, the widow of Thomas K. Green, the description of the entire property being the same as that last above mentioned and the conveyance containing the usual warranty of title. There is, however, added to the deed, the following, to wit:
“And the said Edward H. Green, also, by these presents, * * * doth release and quitclaim all title and interest and claim he may have, being an undivided one-half interest, unto the said Ellen H. Green, * * * in and to the east half of the east half of section thirty one (31) in township nine (9) north, range nine east, * * * containing one hundred and fifty-nine and seventy-five hundredths (159.75) acres, more or less.”
And the title stood in that way (in Mrs. E. PI. Green and the heirs of T. K. Green) at the time of the institution of this suit.
During the years 1890, 1891, 1892, 1893, and 1S94 “Rota Quinta” was assessed in that name and by boundaries (i. e., the names of the adjacent plantations or proprietors alone being given). From 1896 to 1899, inclusive, it was assessed in that name, and also by the governmental descriptions of the five tracts mentioned in the title.
In 1900 the levee board employed counsel to search for property that was escaping taxation, and they reported the tract in dis *959 pute which their search had failed to disclose as included in either the title or the assessments of “Rota Quinta Plantation,” and thereupon, and thereafter, the plantation was assessed by name and according to the acreage of the five governmental subdivisions, of which it had previously been described as constituted, and with reference to which it had been assessed and the tract in dispute was assessed as a separate property and continued to be so assessed until 1911, when, by advice of counsel, defendants had it included by the governmental description as one of the tracts constituting Rota Quinta Plantation, and it appears to have been so assessed since that time.
A. W. Metcalfe was deputy sheriff and ex officio tax collector of the parish for a number of years and never caused the property here claimed to be separately assessed, or, save in casual conversations, asserted any interest in it, and when he died (in 1895) no land was inventoried in his estate.
Opinion.
The jurisprudence of this court is well settled, and well founded, to the effect that article 3806 of the Civil Code, which declares that it is necessary to the validity of a conventional mortgage that it should “state precisely the nature and situation” of the mortgaged property, is sufficiently complied with if the description identifies the property with reasonable certainty and is of such a character as not to mislead, or keep in the dark, creditors of the mortgagor or other persons having an interest.
In City Bank v. Denham, 7 Rob. 40, 41, it was said:
“The defendant cannot complain that he has been misled by the erroneous.description of the lot. * * * The lot was described with sufficient certainty, and in a manner not calculated to mislead or deceive any one.”
In Ells v. Sims, 2 La. Ann. 254, it was said:
“The land is described as situate on the Mississippi river, in the parish of Concordia; boundaries are stated, and the expression ‘my land,’ especially in the absence of any evidence showing the ownership of other land by Sims, is' fairly comprehensive of the entire tract. * * * The question is whether, under the circumstances any one contracting with Sims, or in anywise trusting him, * * * would have been misled or kept in the dark by the omission to state the township, range and section, and the quantity of acres in Sims’ tract. We think not; and are of opinion that in this case there has been a fair compliance with the requisition of law, that the mortgage and its registry shall ‘state precisely the nature and situation’ of the property.”
In Baker v. Bank of Louisiana, 2 La. Ann. 371, the act of mortgage which was the subject of litigation described the mortgaged property as:
“A certain tract of land, or parcel of ground, with the improvements thereon, situate, lying and being in said parish, on the bayou Tunica, being the land and plantation purchased by the said Samuel Wimbish, at the probate sale of Samuel Davis, deceased, containing five hundred acres.”
The court said:
“We consider the description sufficient. It states the parish, a stream on which the property lies, the number of acres, and the use made of the property, and recites the origin of Wimbish’s title.”
In City National Bank v. Barrow, 21 La. Ann. 396, it appeared that the mortgaged property was described as:
“Her entire landed interest in the aforesaid parish of West Feliciana, situated on and adjacent to the Mississippi river, and composed of 3,800 acres of land more or loss, as per acts of sale to be found at my [the parish recorder’s] office in the town of St. Francisville, parish aforesaid.”
It was said by the court:
“The description is inartificial, but it can hardly be said to be insufficient. In the first place it declares the object mortgaged to be ‘her entire landed interest in the parish of West Feliciana’; in the second place it is stated to comprise 3,800 acres, more or less; in the third place it is stated to be on and adjacent to the Mississippi river; and finally it refers to certain titles of the mortgagor to be found in the office of the recorder, and to which we will again allude. * * * ”
Thereafter, alluding to the titles, in answer to the contention that, at the date of the mortgage, there were four patents call *961 ing for 1,269.66 acres which were not in the recorder’s office, the court said:
“We think this position untenable. The mortgagor hypothecated her entire landed interest in the parish, and at the time she owned the lands embraced in the four patents. She described it as embracing about 3,800 acres, and the amount of the eight tracts corresponds with that portion of the description. We regard the reference, ‘as per acts of sale,’ etc., not as limiting the previous portion of the description, but as merely explaining it, pro tanto.”
In Consolidated Association v. Mason, 24 La. Ann. 518, the description m dispute was:
“Une terre de cinque arpents de face, limitrophe a la ville de Monroe, sur quarante arpents de profondeur, dont cinquante arpents sont cultiver en coton et mais, le surplus étant en trois actions.”
And the court said of the property so described:
“The. situation of the property was adjoining or bounding the town of Monroe, and of such a shape, quantity and position as to inform any reasonable man of ordinary experience examining the public records for incumbrances on Mr. and Mrs. Mason’s property, where the land was which they mortgaged,” etc.
In Roberts v. Bauer, 35 La. Ann. 454, it appeared that the mortgaged property was described as “un vaste terrain a 1’eneoignure des rues OrlSans et Bourbon.” The court quoted from Troplong (Hyp. et Priv. No. 536):
“II ne faut pas apporter esprit trop minutieux dans l’exigence de ces conditions. II suffit que les parties aient employé telle ou telle designation qui ne laisse pas de doute sur l’identité de l’immeuble”
—and held that the description was a fair compliance with the law.
In Dickson v. Dickson, 36 La. Ann. 870, it was held (quoting the syllabus):
“Where in an act of mortgage the property mortgaged is first described by legal, subdivisions and these subdivisions are then declared to compose a certain plantation, giving the name thereof and otherwise sufficiently describing it apart from the subdivisions mentioned, held that the mortgage rested on the plantation and that parrol evidence was admissible to show that the description by the legal subdivisions was erroneous and that said numbers did not, in whole or in part, compose the plantation.”
In Bryan v. Wisner, 44 La. Ann. 832, 11 South. 290, it was held (quoting from the syllabus):
“If a portion of the description would mislead, it must be read with, and controlled by other parts which explain it; and an error in a description by legal subdivisions may be cured by other descriptive designations of the property in the conveyance, which leave no doubt of the particular tract that was intended to be sold.”
See, also, Fleming & Baldwin v. Scott, 26 La. Ann. 545; Thornhill v. Burthe, 29 La. Ann. 639; Favrot v. Stauffer, 112 La. 164, 36 South. 307; Penn v. Rodriguez, 115 La. 174, 38 South 955.
[1] In the instant case, the act of mortgage, after acknowledging the amount and form of the debt to be secured, proceeds as follows:
“Now, therefore, in order to secure * * * the full and punctual payment thereof, * * * the said parties * * * do, by these presents, mortgage * * * the following described property [and then follow descriptions, according to governmental surveys; with statements of acreage, of the five specified tracts of land, after which the act again proceeds], containing, in the whole, about nineteen acres, and forming what is known as ‘Rota Quinta Plantation.’ ”
The subdivisions, the acreage of the subdivisions, separately and in the aggregate, and the recognized name and use made of the property, thus together constitute the description, and the purpose in employing them all was that each might check and correct errors in the others. And in that connection, we may say that, though the conclusion of the court, in Dickson v. Dickson (supra) seems to have been entirely authorized by the facts, it appears to us that the opinion is not altogether clear in its discussion of the relative importance of the descriptions of the subdivisions and of the designation, by name, of the plantation, since it is equally as competent for the vendor and vendee of a plantation to agree upon the parts of which it is composed as to agree upon the sale and purchase of the whole; and in the end the case was decided upon the ground that there was *963 error in the description of the.parts; and so, as we think, there was here.
[2] Dr. Metcalfe, in 1845 and 1846, purchased various contiguous tracts of land and went into the business of planting cotton He appears to have had no other business that required the use of land, and at the time of his death all the land so purchased was inventoried as a cotton plantation, and he owned no other. 1-Iis widow continued the planting of the place from 1852 until 1867, and obtained advances from her factors for that purpose. In the year last mentioned she, individually and as tutrix (of one of her children), and her major and emancipated children gave the mortgage to Gillis & Oo. upon certain described tracts, and the mortgage concluded with the statement, “containing, in the whole, about nineteen acres, and forming what is known as Rota Quinta Plantation.”
The omission of the word “hundred” (between the words “nineteen” and “acres”) is said to have been corrected in the sheriff’s deed, and appears in the copy of the act of mortgage, as we find it in the transcript. It is said that the property mortgaged was that which was stated in the act to have been mortgaged, to wit, the five tracts of land which were described, but the description did not end there; it went on to say that the property mortgaged consisted of about 1,900 -acres of land, and that it was “known as Rota Quinta Plantation,” and as a matter of fact, the plantation, as it was then “known” and had always been known, consisted of the described tracts, plus two tracts that were not included in the description, to wit, the tract here in dispute and the tract of 40.02 acres in section 82; but, whilst the tracts, as described, contained but 1,885.53 acres, the addition of the two tracts that were-omitted would make a total of 2,085.30 acres, and the subtraction therefrom of the 90 acres, sold to Stanton, would leave 1,995.30 acres, or 108.77 acres in excess of the estimated total called for by the title. Corroborative evidence to the effect that all the land left by Dr. Metcalfe had been, and continued to he, known as a single plantation, is however, to be found in the proceedings with a view to the partition. Conceding that those proceedings were void for the various reasons stated by this court, they, nevertheless, at a time unsuspicious and in a matter wherein the participants were acting wholly in the interests of the defendants, expressed a recognition of the fact, in harmony with all the other facts that are disclosed, that the succession of Dr. Metcalfe, as to the real estate, consisted of Rota Quinta Plantation, and that Rota Quin-ta Plantation included all the wild lands lying to the south of sections 25 and 30; which is a matter of no little significance, since Andrew W. Metcalfe himself was one of the participants in the proceedings, and this court found that about the time that the mortgage was executed he “had control and management of the plantation,” from which if is fair to infer that he was fully informed as to its composition.
Again, by reference to the “sketch,” it will be seen that the tract in dispute, being a strip a mile long by a quarter of a mile in width, is the connecting link between the body of the plantation and the smaller tracts lying in sections 5, 6, and 32, and that, by leaving it out, the mortgage would be left to rest upon a plantation consisting of two parts, a mile away from each other, the one composed of over 1,600 acres of arable land, and the other, counting the tracts in sections 5 and 6, of say 160 acres of swamp, or woodland, acquired, presumably, in order to supply the plantation with fuel, fencing, and perhaps lumber.
And, in addition to the circumstances mentioned, there appears the fact that, from the date of the sale to Alter in 1881, until this suit was filed, on December 30, 1911, a period *965 of 30 years, neither of the heirs ever suggested the idea that the disputed tract had not been included in that sale and in the various sales which followed, and, though Andrew W. Metcalfe had, in the meanwhile, been deputy sheriff, sheriff, and tax collecter, and was therefore in a position to have become informed of his rights, he died in 1894, leaving no real estate, or claim to real estate in the parish, so far as appears from the proceedings in his succession.
[3] “When the intent of the parties is doubtful,” says the Code, “the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation.” C. C. art. 1956; Marcotte v. Coco, 12 Rob. 167; Fontenot v. Manuel, 46 La. Ann. 1373, 16 South. 182; Succession of Bidwell, 51 La. Ann. 1986, 26 South. 692.
It is true that in the meanwhile also the tract in question had not appeared, with the others described in defendant’s title, upon the assessment rolls, but that was for the same reason that it had not appeared in the title, to wit, it had been overlooked. As a legal proposition, we are of opinion that the adjudicatees under the Alter judgments, and their immediate successors, in taking possession of the property “known as Rota Quinta Plantation,” had taken possession of it, as they had acquired it, i. e., as part of that plantation. The learned counsel for plaintiffs argue that there could have been no consent, and hence no contract, concerning property of the existence of which the contracting parties were ignorant; but that is not the law. The articles of the Civil Code, to which he has referred us, declare that:
“Ilowever general be the terms in which a contract is couched, it extends only to the things concerning which it appears that the parties intended to contract” (article 1959); but that, “when the object of the contract is an aggregate composed of many or of different articles, * * * the * * * aggregate name will include all the particular articles which enter into the composition of the whole,” though not specified and even though “unknown to both or either of the parties” (article 1960).
An exception is provided to the rule last stated, however, in a case where, although the aggregate appellation be used, it appears from some other part of the contract that the intent of the parties was “not to include the whole, but only that part of which they had notice, in which event, such evident intent,” says the lawmaker, “shall correct the universality of the description.” And by way of illustration it is said:
“Thus, in a release of a whole share in a succession, if there be a reference to an inventory as descriptive of what that share is the contract, notwithstanding the general terms, shall be confined to what is contained in the inventory.” Article 1961.
It might, perhaps, be contended that this case falls within the exception thus provided, and that, if a reference to the inventory, in the case of the sale of a share in a succession, confines the contract to what is contained in the inventory, a fortiori will the enumeration, in the contract itself, of the parcels of land said to constitute the property mortgaged, confine the mortgage to the parcels mentioned in the enumeration. The answer to that contention is that the mention of the parcels of land with which we are concerned was not intended as an “enumeration,” in the technical sense of that term, but was made as one part of the description of the property intended to be mortgaged, the other parts of which were the statements of the aggregate acreage and of the designation whereby the entire property was known, and that all the parts are to be construed together, and so far as possible, harmonized, in the light of the surrounding circumstances.
It will be observed that the article of the Code reads:
^ “Such evident intent shall correct the universality of the description.”
*967 But, in this instance, we think the intent, though perhaps not evident on the face of the instrument, has been made evident by the surrounding circumstances, and that it was the reverse of that which would be required to bring this case within the exception to the general rule established by Act No. 196.
It is true also that in 1891 Mrs. Pendleton (widow) and J. H. Pendleton, as owners and mortgagors, with Norman F. Thompson, as mortgagee, agreed upon a correction of the description of the property, “known as Rota Quinta Plantation,” whereby and wherein the tract- which had been sold to Stanton was eliminated (no attempt being made to include the tract here in dispute or the 40.02 acres in section 32), and the aggregate acreage of the property, as acquired under the Gillis & Co. and Pendleton mortgages, was reduced from “about 1,900 acres” to 1,796.13 acres, and it was according to that title and that acreage that the property passed to defendants, whose immediate authors therefore bought it as containing 1,796.13 acres, and, so far as we are informed, got all that they bought, as did the defendants; so that the loss resulting from the error in the description in the mortgages appears to have fallen, not on the defendants, but on the Pendletons, who bought the property as containing “about 1,900,” and sold it as containing 1,796.13, acres. It is likewise true that in 1901 Edward H. Green sold his undivided one-half interest in the property “known as Rota Quinta Plantation,” with full warranty of title (and on the basis of 1,796.13 acres for the whole) to Mrs. Ellen H. Green, and that by the same act he “quitclaimed” to Mrs. Green his interest (described as an undivided one-half) in the tract in dispute. It is further true that, from 1900 to 1911, the tract in dispute was not assessed as part of “Rota Quinta,” but as a separate property, and was assessed as part of the plantation for the first time in 1911, from which we infer that from 1881 to 1900 there were no taxes paid on it by defendants. On the other hand, there were no taxes paid during that period by plaintiffs, nor, as we imagine, have any been paid since then. If, however, the view that we have taken of the matter be correct, and we hold it to be, the facts thus recapitulated are of no interest to plaintiffs, since it must follow that they were devested of their title to the property in controversy by the sales made, the one by James A. Metcalfe of his interest in 1S78, the other by the sheriff, under the Alter judgment, in 1881.
In conclusion, we may say that as the Gillis & Co. mortgage purports to show the different tracts of which the property therein designated as the “Rota Quinta Plantation” was comprised, and as the tract held in dispute, though one of them, was not included, we are of opinion that its omission was an error in defendants’ title which defendants should have alleged as a condition precedent to proving; but, though they made no such allegation and rested on the mere averment that the tract was conveyed as part of “Rota Quinta,” the evidence showing, not only that it was part of Rota Quinta but that it was reasonably certain that it had been omitted from the mortgage through error, was admitted without objection, and hence has been considered as supplying the formal allegation of error in the title.
[4] Act No. 38 of 1908, being an “Act to authorize * * * suits to establish title to real estate where none of the parties are in * * * actual possession of the same,” etc., we think contemplates a suit in which the litigants come before the court upon equal terms and subject only to the ordinary rules in regard to the burden of proof, one of which is that he who alleges error in an authentic act or in any act under which he claims title to real estate carries the burden of proving what he alleges. We have considered the case from that point of view and *969 are of opinion that defendants have carried the burden of proof, and that the learned judges of the district court and Court of Appeals, whose able opinion we appreciate, have correctly decided that they have the better title.
It is therefore ordered that the demands of the applicants herein be rejected, and this proceeding dismissed at their cost.